814 So.2d 1083 (2002)
EAGLE AMERICAN INSURANCE COMPANY, Appellant,
v.
Harry NICHOLS and Cenus Nichols, Appellees.
No. 4D01-172.
District Court of Appeal of Florida, Fourth District.
March 13, 2002.
Rehearing Denied May 16, 2002.
*1084 Eric G. Belsky of Johnson, Leiter & Belsky, Fort Lauderdale, for appellant.
Lance J. Block of Searcy Denney Scarola Barnhart & Shipley, P.A., and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellees.
WARNER, J.
This appeal arises from a dispute regarding the policy limits of a legal malpractice insurance policy. Based upon its interpretation of the policy, the trial court found there were several acts of malpractice during the legal representation of appellees. Thus, appellees were entitled to the aggregate policy limits. While there were several wrongful acts, we hold that they were related and constituted but one claim of legal malpractice under the policy language. We therefore reverse.
Harry Nichols, appellee, suffered serious injuries as the result of an automobile accident. He was taken to Jess Parrish Medical Center, where he was evaluated by several physicians, including a surgeon, an orthopedist, and a radiologist. These physicians misinterpreted Nichols' x-rays and radiological studies and negligently concluded that he did not suffer a recent spinal column injury. As a result, the attending surgeon and assistant encouraged Nichols to attempt to walk approximately a week after the accident. When he arose from the bed, Nichols felt a shock and collapsed. He was transferred to Orlando Regional Medical Center where he underwent surgery on his spine. However, the surgery was unsuccessful in reversing the spinal column damage.
Nichols retained Mr. James Kelaher of the law firm of Kelaher, Weiland, and Hilado to investigate and initiate a malpractice action against the various physicians. Although Kelaher considered joining the Jess Parrish physicians individually in the malpractice suit, for various reasons he decided not to join them and sent an intent to sue only to Jess Parrish and Orlando Regional and its physicians. When the complaint was filed, however, Jess Parrish was not named. During discovery, Kelaher realized that Orlando Regional's defense was based upon the comparative fault of Jess Parrish and its physicians. At this point, the statute of limitations had expired, and Kelaher realized the potential of a legal malpractice claim for failing to join them. Kelaher contacted Eagle American, his insurance company. He also referred Nichols to new counsel. Nichols settled with Orlando Regional and its physicians for $1,000,000, and then brought a legal malpractice action against Kelaher and his firm, which Eagle American agreed to settle for the policy limits. However, the parties disputed whether the "per claim" amount applied or whether the "aggregate" amount applied. Specifically, the parties disputed whether the attorney's failure to name Jess Parrish and each individual Jess Parrish physician constituted independent wrongful acts or a single claim.
Nichols filed a declaratory judgment action to determine the issue. He claimed that the policy provided $250,000 per "wrongful act" with a $500,000 aggregate for multiple wrongful acts. Because Kelaher committed multiple wrongful acts, Nichols claimed that he was entitled to the aggregate limits. Eagle American argued *1085 that the policy was a claims-made policy and that the policy provided $250,000 per claim rather than per wrongful act. Since there was only one claim, Nichols was entitled to only $250,000 in coverage. The trial court agreed with Nichols and, on motion for summary judgment, entered a judgment in favor of Nichols for the aggregate limits. Eagle American appeals this judgment.
The insurance policy in question is a "claims-made" policy which covers claims made against the insured during the policy period. Specifically, the policy provides that:
We will pay on behalf of an INSURED all sums an INSURED must legally pay as DAMAGES because of a WRONGFUL ACT that results in a CLAIM first made against an INSURED and which is reported to U.S. in writing during the POLICY PERIOD. "Claim" means a demand received by us or an insured ... for money or services. "Wrongful act" means ... any negligent act, error or omission arising out of professional services rendered or that should have been rendered by an Insured.
The policy conditions also state:
THE MOST WE WILL PAY
(1) Each ClaimThe limit shown in the Declarations as "per Claim" is the maximum WE will pay for all CLAIMS and CLAIMS EXPENSES arising out of or in connection with the same or related wrongful ACT. This limit applies regardless of the number of YOU that are insured under this policy or the number of CLAIMANTS.
(2) AggregateSubject to (1) above, the maximum amount WE will pay for all CLAIMS and CLAIMS EXPENSES will not exceed the limit shown in the Declarations as "Aggregate." All WRONGFUL ACTS for which CLAIMS (or incidents which later become CLAIMS) are reported during the policy PERIOD are included.
The construction of an insurance policy is a question of law for the court. See Jones v. Utica Mut. Ins. Co., 463 So.2d 1153, 1157 (Fla.1985). Such contracts are interpreted in accordance with the plain language of the policy, and any ambiguities are liberally construed in favor of the insured and strictly against the insurer as the drafter of the policy. See Westmoreland v. Lumbermens Mut. Cas. Co., 704 So.2d 176, 179 (Fla. 4th DCA 1997). A policy is ambiguous where it is susceptible to two or more reasonable interpretations. See Herring v. First S. Ins. Co., 522 So.2d 1066, 1068 (Fla. 1st DCA 1988). However, a policy is not ambiguous merely because it is complex and requires analysis to interpret it. See State Farm Fire & Cas. Co. v. Oliveras, 441 So.2d 175, 178 (Fla. 4th DCA 1983).
Nichols contends the aggregate policy limit should apply where his attorney committed multiple wrongful acts by failing to join several defendants in his medical malpractice action. Because each of these defendants had separate insurance coverages available to pay a damage award, Nichols argues he had multiple claims against his attorney. However, Eagle American asserts that Nichols has only a single claim because he suffered one injury-he did not receive his full recovery because the attorney failed to join all the proper defendants before the statute of limitations tolled. Even if the failure to sue each defendant is considered a wrongful act, Eagle American argues these wrongful acts are related to Nichols' sole malpractice claim against his attorney.
Eagle American's interpretation of the policy is consistent with the policy *1086 language. A claim under the policy is a demand against the insured for money. In this case, there was but one demand for money, namely the lost recovery because of the failure to join various other defendants and thus one claim. Even if Nichols had multiple claims against his attorney, the per claim limit still applies where the claims arise out of the same or related wrongful acts.
In Paradigm Insurance Co. v. P & C Insurance Systems, Inc., 747 So.2d 1040 (Fla. 3d DCA 2000), the court considered whether two acts of negligence were related so that notice of the first act constituted timely notification of both alleged acts of negligence. The plaintiff's first claim of insurance agency negligence was for the agency's failure to procure primary insurance coverage. It then later claimed that the agency was negligent in failing to notify an excess carrier of a third party claim against the insured. The third district said:
Courts have pronounced different analyses in determining what constitutes a "related" act. In Arizona, for example, the Supreme Court determined that for acts to be "related" there must be a causal connection between the acts. See Arizona Property & Cas. Ins. Guar. Fund v. Helme, 153 Ariz. 129, 735 P.2d 451, 457-58 (1987). Under the analysis of the California Supreme Court, however, the question appears to be whether each of the claimed negligent acts contributes to, or causes, the same monetary loss. See Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263, 1272 (1993). If the errors lead to the same injury, under the California analysis, they are "related." See id. Under the analysis of the United States District Court for the Southern District of Florida, acts will not be "related" if they arise out of separate factual circumstances and give rise to separate causes of action. See Kopelowitz v. Home Ins. Co., 977 F.Supp. 1179, 1188 (S.D.Fla.1997).
The initial letter to the insurance agency asserted a claim for the entire $2 million judgment against Riviera Rental Apartments, as to which there was said to be no liability coverage. Subsequently there was an assertion that the same $2 million judgment was unpaid, in whole or in part, because the excess insurance carrier had denied coverage owing to untimely notice of the underlying tort suit. Since the claim from the outset was for the entire $2 million judgment, and both alleged acts of negligence were said to have caused or contributed to an absence of insurance coverage for the loss, we conclude that the acts are logically "related" for purposes of the notice provision of the policy.
Id. at 1042-43. Similarly, in this case, the claim was for the entire amount of Nichols' uncollected damages as a result of the failure to join several defendants in the suit, and all of the acts of negligence caused or contributed to the inability of Nichols to collect the entire amount of his damages. Thus, the negligent acts were logically related in accordance with the policy definitions.
Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Co., 5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993), cited in Paradigm, is particularly on point, as it involves legal malpractice. In that case, a general contractor hired a lawyer to collect on a debt, but the lawyer failed to serve a stop notice on the project's construction lenders and did not foreclose on a mechanic's lien. The contractor sued the lawyer, and the lawyer's liability insurance carrier agreed to pay the policy limit per claim of $250,000. *1087 However, the contractor argued he had two claims against the lawyer because each of the lawyer's errors resulted in a separate injury. The parties submitted the issue to the court to resolve. The policy defined a claim as a "service of suit... for money against the insured." Id. at 1265. It also included a limitation of liability provision that provided, "[t]wo or more claims arising out of a single act, error, or omission or a series of related acts, errors, or omissions shall be treated as a single claim." Id. In its analysis of the issues, the California Supreme Court considered the injury the client suffered, rather than the errors the lawyer committed. The court concluded that the contractor suffered one injury, the inability to collect the debt that was owed to it. See id. at 1266.
The contractor in Bay Cities attempted to argue that there were two claims because it had two sources of payment. The California Supreme Court rejected this argument and stated, "when, as in this case, a single client seeks to recover from a single attorney alleged damages based on a single debt collection matter for which the attorney was retainedthere is a single claim under the attorney's professional liability insurance policy." Id. Applying that rationale to this case, Nichols retained an attorney to recover damages he incurred as a result of several physicians' negligent conduct, but was unable to recover the full extent of his damages because of the attorney's failure to include all the responsible defendants in his action. The attorney's negligent omission may be considered multiple wrongful acts, but Nichols suffered only one injuryan award that does not represent the full extent of his damages.
We agree with the reasoning of Bay Cities and Paradigm. The alleged wrongful acts of the attorney were related and resulted in a single claim. We therefore reverse and remand for entry of a declaratory judgment determining that the policy limit "per claim" and not the aggregate limit applies in this case.
FARMER, J., and ROBY, WILLIAM L., Associate Judge, concur.